# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT OF BROOMFIELD COUNTY, COLORADO<br><br>Court Address:<br>17 Descombes Dr.<br>Broomfield, CO 80020 | DATE FILED<br>March 13, 2025 3:00 PM<br>FILING ID: ED545878F5B33<br>CASE NUMBER: 2025CV30070 |
| **Lauren Barotz**,<br><br>Plaintiff,<br><br>v.<br><br>**Vail Resorts**, **Inc.**, a Delaware corporation.<br><br>Defendant. | ▲ COURT USE ONLY ▲ |
| Attorneys: Andrew C. Quisenberry, # 43805<br>  Elizabeth Marasco, # 60165<br>  Jacqueline R. Guesno, # 34753<br>Address: HKM Employment Attorneys LLP<br>  518 17th Street, Suite 1100<br>  Denver, CO 80202<br>Phone No.: (720) 263-5415<br>E-mail: aquisenberry@hkm.com<br>  emarasco@hkm.com<br>  jguesno@hkm.com | Case Number: _____<br><br>Ctrm.:    Div.: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff Lauren Barotz ("Plaintiff"), by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint and Jury Demand against Vail Resorts, Inc. ("Defendant"), states and alleges as follows:

**PRELIMINARY STATEMENT**

Few events in life are more monumental than the birth of a child and the special—and difficult—time that follows. The State of Colorado has codified its public policy of protecting this special and difficult time, as well as the working parents who are in it, through several state laws, including the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et. seq.* ("CADA"), the Pregnant Workers Fairness Act, C.R.S. § 24-34-402.5 ("PWFA"), and the Workplace Accommodations for Working Mothers Act, C.R.S. § 8-13.5-104 ("WANMA").

This is a case about a working mother, Lauren Barotz, who experienced discrimination at Vail Resorts, Inc. during this special and difficult time that the State of Colorado seeks to protect.

First, Ms. Barotz's coworker commented on her pregnancy. Then, Ms. Barotz's coworkers and supervisors subjected her to comments related to her ability to be a working mother. Eventually, the comments became adverse employment actions—Defendant failed to respect Ms. Barotz's scheduled time to express breastmilk, failed to promote her to several positions for which she was qualified, and, eventually, terminated her.

## PARTIES

1. Plaintiff is and was, at all times relevant to this Complaint, a citizen of Colorado.

2. Defendant Vail Resorts, Inc. is a Delaware corporation with its principal place of business at 390 Interlocken Crescent, Ste 1000, Broomfield, CO 80021.

3. Upon information and belief, Defendant has more than 500 employees.

4. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant as defined by C.R.S. § 24-34-401(2).

5. At all times relevant to this Complaint, Defendant was an "employer" of Plaintiff as defined by C.R.S. § 24-34-401(3).

## JURISDICTION AND VENUE

6. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

7. This Court has personal jurisdiction over Defendant pursuant to C.R.S. § 13-1-124 because Defendant is located in and conducts substantial business activities in Broomfield County, Colorado.

8. Venue is proper pursuant to C.R.C.P. 98 because Defendant resides in Broomfield County, Colorado. Additionally, the alleged commission of unlawful acts occurred in Broomfield County, Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

9. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

10. On or about February 26, 2024, Plaintiff dually filed a Charge of Discrimination against Defendant with the Colorado Civil Rights Division ("CCRD") (Charge No. E2400023481)

2

and the Equal Employment Opportunity Commission ("EEOC") (Charge No. 32A-2024-00456) alleging discrimination based on Plaintiff's sex/gender including pregnancy, disability and/or perceived disability, and retaliation.

11. Plaintiff amended her Charges of Discrimination with the CCRD and EEOC on or about June 18, 2024, to add a Failure to Promote claim.

12. The CCRD issued Plaintiff Notices of Right to Sue for Charge No. E2400023481 on or about December 13, 2024. The EEOC issued Plaintiff a Notice of Right to Sue for Charge No. 32A-2024-00456 on or about February 6, 2025. Plaintiff filed the present action within ninety (90) days of receipt of same.

13. The Parties engaged in nonbinding mediation as required by § 8-13.5-104(5) on November 14, 2024, with the CCRD.

14. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

15. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

### Ms. Barotz Excels as Director of Marketing

16. Ms. Barotz began working for Defendant in October 2019 as Senior Marketing Manager for the Defendant's Ski & Ride School.

17. Ms. Barotz was successful in her role, and, in January 2021, Defendant promoted her to Director of Marketing for the Rocky Mountain Region.

18. Ms. Barotz was a high performer and was consistently ranked as "achieves" and "exceeds" expectations in her performance reviews.

19. While serving as Director of Marketing, Ms. Barotz had many successes, for example:

   a. In or about February 2023, Ms. Barotz helped to create "magic" on the slopes in executing a milestone for the National Brotherhood of Skiers & Riders, gathering 2,000 Black skiers in Vail. In this process, Ms. Barotz executed award-winning partnerships with Gray Malin and the National Brotherhood of Skiers, resulting in improved brand health for Vail Mountain, and which helped create a halo effect on the enterprise.

3

b. Boasting that Defendant is "the leading mountain resort company in the world (NYSE: MTN) with an incredible leadership culture and a ton of heart for what we do," Ms. Barotz helped hire for the Senior Manager of Resort Marketing position.

c. Ms. Barotz worked on a multi-year plan for Defendant's flagship resort, Vail Mountain, to rebound unaided brand awareness to #1, working on media investment strategy, creative campaigns, and the 60th anniversary guest experience. This led to rebounding to #1 awareness in 2023, and Defendant receiving the Colorado Tourism "Best Creative" Award at the Governor's Conference.

d. Ms. Barotz improved Defendant's relationship with the Town of Vail while sitting on the Vail Marketing Advisory Board for multiple years.

e. Ms. Barotz helped to secure a Michelin-award-winning restaurant (Wolf's Tailor) to collaborate on a partnership.

f. Ms. Barotz was a consistent and impactful cross-functional leader, overseeing the go-to-market strategy for multiple years, and resulting in high impact media investment, improved integrated marketing plans, and efficient ad production budget utilization.

### Ms. Barotz is Subjected to Discrimination Based on Her Pregnancy, Parental Leave, and/or Need to Express Breastmilk

20. From the time that Ms. Barotz became pregnant, however, she was subjected to discriminatory treatment by her supervisors and colleagues.

21. In or around November 2022, for example, Rob Sharpe (Field Marketing Manager) said, in a snarky way: "It must be hard being pregnant and working. I can only imagine how much harder it's going to get now that you are going to have a family."

22. Ms. Barotz promptly reported the issue to her supervisor, Jeff Werkheiser (Senior Director of Resort Marketing), who then reported it to Scott Baldwin (VP of Brand Marketing).

23. Unfortunately, Defendant failed to take action on and dismissed Ms. Barotz's report.

24. On or about January 10, 2023, Ms. Barotz gave birth to her son.

25. From approximately January 10, 2023, to April 4, 2023, Ms. Barotz went on parental leave.

26. When Ms. Barotz returned to work on or about April 5, 2023, Ms. Barotz jumped back into work and hit the ground running. However, after Ms. Barotz became a mother, Defendant began treating her with increased hostility.

27. Ms. Barotz was also lactating and needed regular breaks to express breastmilk. She had an express right to such breaks under Colorado law.

28. Beginning in or about May 2023, only one month after Ms. Barotz returned from parental leave, her workload grew significantly.

29. Ms. Barotz received only minimal development conversations or leadership support on projects she was overseeing, whereas she had more support before becoming pregnant and taking parental leave. When Ms. Barotz voiced concerns about the lack of support and increased workload on return from leave, no support was provided.

30. In addition, Ms. Barotz's counterpart, Tiff Gansler, was domineering and disruptive to the work environment. Likewise, in a meeting of numerous group leaders, Spencer Kelly (Senior Director of Resort Marketing) spoke condescendingly to Ms. Barotz, stating: "Just trust me, I know how to sell work, and you need to fall in line."

31. In addition, team members were not respectful of Ms. Barotz's calendar, consistently booking meetings during the time that she was entitled to take her breaks to express breastmilk.

32. Further, Jess Zukin Sheahen (Senior Director of Resort Marketing at Vail) said to Ms. Barotz at her end of year review: "You just don't seem to have the same drive or dedication [as before going on parental leave], and you did not rise to the occasion when your boss was let go."

**Defendant Fails to Promote Ms. Barotz**

33. In or around May 2023, Mr. Werkheiser separated from his employment with the Defendant. Ms. Barotz was qualified for his position, and she identified herself to Defendant as interested and ready to take over for him.

34. Mr. Baldwin told Ms. Barotz that she was not ready. But, during this conversation, Mr. Baldwin did not discuss Ms. Barotz's performance, nor did he suggest that Ms. Barotz was not ready because of her performance. Mr. Baldwin said he wanted to coach and mentor Ms. Barotz, and that it was only a matter of time before Ms. Barotz would be promoted.

35. Ms. Barotz never received the promotion to Senior Director of Resort Marketing, even though she was interested and qualified.

36. Instead, Garrett Hill (male) was hired to replace Mr. Werkheiser in or about June 2023. Soon after, Mr. Hill left the company. From approximately July to September 2023, the Senior Director role remained vacant, despite Ms. Barotz's willingness and qualifications to take on the role.

### Defendant Continues to Discriminate Against Ms. Barotz, Even After Her Reports of Discrimination

37. On or about October 6, 2023, Ms. Barotz explained to Ms. Zukin Sheahen that Ms. Barotz was having a negative experience in returning to work following parental leave.

38. After Ms. Barotz reported her concerns about discrimination, Ms. Zukin Sheahen seemed to double-down on the conduct. Ms. Zukin Sheahen provided feedback that had never before been shared with Ms. Barotz and repeatedly moved one-on-one and developmental conversations.

39. Additionally, Ms. Zukin Sheahen dismissed Ms. Barotz's concerns, was aggressive in tone, and suggested her negative experience in returning from parental leave was, in actuality, Ms. Barotz's fault.

40. In or around September 2023, Defendant appointed Ms. Zukin Sheahen to Senior Director of Resort Marketing. After Ms. Zukin Sheahen's appointment, the discriminatory treatment towards Ms. Barotz worsened.

### Defendant Fails to Promote Ms. Barotz Multiple Times Because of Her Protected Status, Ms. Barotz Again Reports the Discrimination to No Avail

41. In early September 2023, Ms. Barotz applied to a Director of Pass Acquisition position. Ms. Barotz was excited to apply as her skillset and experience within the corporation made her a perfect candidate for the position. Moreover, it was a natural step in her career trajectory with Defendant. Ms. Barotz expressed her excitement about the new position and the possibility of promotion.

42. In response, on or about September 17, 2023, Sam Eichenblatt (Senior Director of Season Pass Marketing) said in a conversation with Ms. Barotz: "I'm not sure if you'll want this role as a new mom…"

43. A few days later, acknowledging his comment was inappropriate and discriminatory, Mr. Eichenblatt wrote:

6



44. Ms. Barotz did want this role as a new mom.

45. Ms. Barotz indicated her interest in the promotion but was again discouraged from applying by one of her supervisors because of her parental leave and new status as a mother. This time, Ms. Zukin Sheahen, discouraged Ms. Barotz from even applying to Director of Pass Acquisition because she was a mother:



46. So, having been discouraged twice, Ms. Barotz did not apply for the promotion, as she felt like she would be making a bad decision for her family.

47. Thus, Defendant failed to promote Ms. Barotz to a position she was well-qualified for and excited about, merely because of her status as a new mother and her recent parental leave.

48. Ms. Barotz reported the discriminatory comments and the discriminatory failure to promote her to Defendant's leadership.

49. In or about October and November 2023, Ms. Barotz mentioned a number of other promotions for which she was interested to her supervisors. For example, in her development

7

document, she listed multiple roles she was qualified for and interested in, including Director of Strategic Alliance, Director of Creative Services, and Director of Marketing Operations.

50. Further, she applied for a position as Senior Director of the Rockies Region. She reminded Defendant that she was dedicated, enthusiastic, and ready to continue growing her career with the company.

51. Again, Ms. Barotz was denied the promotions.

52. At a monthly development conversation in or about early December 2023 – and seemingly out of the blue given her consistent feedback of being a top-performer – Ms. Zukin Sheahen told her that Ms. Barotz was "no longer able to be in the role," "not a top candidate for any other position at Vail," and that her "time at Vail [was] up."

53. Ms. Barotz was shocked, and asked Ms. Zukin Sheahen what this meant – "are you laying me off?" Ms. Zukin Sheahen assured Ms. Barotz that this was not the case.

54. However, a few weeks later, on or about January 5, 2024, Defendant terminated Ms. Barotz for purported performance issues.

55. Of note, throughout Ms. Barotz's tenure with Defendant, individuals – particularly at the Director level – were given feedback and opportunities to improve alleged performance issues prior to termination.

56. Unfortunately, Ms. Barotz did not have the same opportunity as those individuals. Instead, the only negative feedback she received was related to her pregnancy/childbirth and caregiving responsibilities.

57. Ms. Barotz was terminated because of her pregnancy, sex/gender, parental leave, and caregiver responsibilities, and in retaliation for reporting discrimination.

58. Further, the Defendant frequently scheduled meetings during time designated on her calendar for pumping.

59. Other women who took parental leave were subjected to similar discriminatory conduct. For example, upon information and belief, Jess Hansen applied for and was denied a Director role shortly after returning from parental leave, despite being well-qualified for the position.

60. Likewise, Hannah Beasley's role was purportedly eliminated while she was on parental leave. Ms. Beasley applied for other positions at an equal level – which she was denied – and ultimately, she was demoted to a Manager position.

61. Because Defendant knew, or through the exercise of reasonable diligence should have known Defendants' discriminatory conduct was intentional and willful.

## FIRST CLAIM FOR RELIEF
### Discrimination and Failure to Promote Based on Sex/Gender/Pregnancy
### Colorado Anti-Discrimination Act
### C.R.S. §§ 24-34-401 *et seq.*

62. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

63. At all times relevant to this Complaint, Plaintiff was an "employee" as defined by C.R.S. § 24-34-401(2).

64. At all times relevant to this Complaint, Defendant Vail Resorts, Inc. was an "employer" as defined by C.R.S. § 24-34-401(3).

65. The Colorado Anti-Discrimination Act ("CADA") prohibits employers from discriminatory or unfair employment practices against employees because of the employee's sex/gender, including pregnancy.

66. Defendant subjected Ms. Barotz to less favorable terms and conditions of employment based on her sex/gender/pregnancy and her status as a mother, a sex-linked trait, including, but not limited to, by increasing Ms. Barotz's workload without a commensurate pay increase or title change; subjecting her to discriminatory comments; failing to promote her to several positions; and terminating her.

67. Ms. Barotz was qualified for the positions with Defendant for which she applied to and/or expressed interested, including but not limited to Senior Director of Resort Marketing at Vail; Director of Pass Acquisition; Director of Strategic Alliance; Director of Creative Services; Director of Marketing Operations; and Senior Director of the Rockies Region.

68. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
### Failure to Accommodate and Discrimination
### Pregnant Worker's Fairness Act
### C.R.S. §§ 24-34-401 *et seq.*

9

69. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

70. The Pregnant Workers Fairness Act ("PWFA"), an employer must provide reasonable accommodations to employees for health conditions related to pregnancy or childbirth, unless the accommodation imposes an undue hardship on the employer's business. *See* C.R.S. § 24-34-402.3.

71. Employers are further obligated to "engage in a timely, good-faith, and interactive process to determine effective, reasonable accommodations for the … employee for conditions related to pregnancy, physical recovery from childbirth, or a related condition." C.R.S. § 24-34-402.3(2).

72. The same statute prohibits employers from taking any adverse action, such as termination, against an employee who requests or uses a reasonable accommodation related to pregnancy, physical recovery from childbirth, or a related condition. C.R.S. § 24-34-402.3(1)(a)(II).

73. Ms. Barotz is female and, during the relevant time period, was lactating.

74. Lactation, like pregnancy, is a sex-linked condition, or a condition that is exclusively female. Only females naturally lactate, and only females naturally experience the need to express breast milk.

75. Lactation needs arise naturally following pregnancy and childbirth and, as such, the need for an accommodation in the form of reasonable breaks to express breast milk at work is a need exclusive to females.

76. Defendant denied Ms. Barotz her reasonable accommodation of expressing breastmilk when it scheduled meetings over her explicit pumping time.

77. Defendant failed to engage in a good faith interactive process regarding Ms. Barotz's scheduled breaks to express breastmilk.

78. Providing Ms. Barotz with uninterrupted breaks to express breastmilk would not have caused Defendant undue hardship.

79. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
### Failure to Accommodate and Discrimination
### Workplace Accommodations for Nursing Mothers Act
### C.R.S. § 8-13.5-104

80. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

81. The Workplace Accommodations for Nursing Mothers Act ("WANMA") provides that "[an] employer shall provide reasonable unpaid break time or permit an employee to use paid break time, mealtime, or both, each day to allow the employee to express breast milk for her nursing child for up to two years after the child's birth." C.R.S. § 8–13.5–104(1).

82. Employees are to be provided with time and space where they can express breastmilk in privacy. C.R.S. § 8–13.5–104(2).

83. Defendant denied Ms. Barotz her reasonable accommodation of expressing breastmilk when it scheduled meetings over her explicit pumping time, thereby failing to provide Ms. Barotz with unpaid or paid break time for Ms. Barotz to express breastmilk in privacy.

84. Providing Ms. Barotz with private breaks to express breastmilk would not have caused Defendant undue hardship.

85. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### FOURTH CLAIM FOR RELIEF
### Retaliation
### C.R.S. §§ 24-34-401 *et seq.*

86. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

87. Ms. Barotz engaged in protected conduct several times while employed with Defendant, including but not limited to, reporting Mr. Sharpe's comments on her pregnancy to Mr. Werkheiser in or around November 2022; voicing her concerns about the lack of support and increased workload upon her return from parental leave in or around May 2023; explaining to Ms. Zukin Sheahen in or around October 2023 that Ms. Barotz was having a negative experience upon her return from parental leave; reporting discriminatory comments and denied opportunities to leadership in or around September or October 2023; and opposing Ms. Zukin Sheahen's untrue comments about Ms. Barotz's performance in or around December 2023.

11

88. Defendant retaliated against Plaintiff after and because she engaged in the above-described protected activity by failing to promote and then terminating Ms. Barotz.

89. These are consequences that would tend to discourage similarly situated employees from protected conduct.

90. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Plaintiff's economic damages as established at trial;

B. Plaintiff's compensatory damages including, but not limited to, those for past and future pecuniary and non-pecuniary losses, shame, humiliation, emotional distress, pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, and other non-pecuniary losses;

C. Punitive damages as permitted under the Colorado Anti-Discrimination Act;

D. Plaintiff's attorneys' fees and costs incurred;

E. Plaintiff pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such further relief as this Court deems just and proper.

G. Plaintiff reserves the right to request punitive damages for all claims as allowed by law.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

DATED: March 13, 2025.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Andrew C. Quisenberry*
Elizabeth Marasco, # 60165
Andrew C. Quisenberry, # 43805
Jacqueline R. Guesno, # 34753
518 17th Street, Suite 1100
Denver, Colorado 80202
emarasco@hkm.com
aquisenberry@hkm.com
jgueson@hkm.com

*Attorneys for Plaintiff Lauren Barotz*

13